KENT COUNTY PROSECUTOR v KENT COUNTY SHERIFF

Docket No. 72805. Submitted October 6, 1983, at Grand Rapids.—
Decided April 3, 1984.

On May 12, 1983, defendant, the Kent County Sheriff, declared a
jail overcrowding state of emergency pursuant to the county
jail overcrowding act, 1982 PA 325. On May 16, 1983, plaintiff,
the Kent County Prosecuting Attorney, brought an action for
declaratory relief in the Kent Circuit Court seeking to have
1982 PA 325 declared unconstitutional and to enjoin the sheriff
from releasing prisoners prior to the expiration of their origi-
nal sentences. Plaintiff also sought a preliminary injunction to
prevent prisoner releases under the act while the lawsuit was
pending. The Kent County Office of the Defender was permitted
to intervene as a defendant. The circuit court denied plaintiff's
motion for a preliminary injunction. On July 14, 1983, the
Court of Appeals denied plaintiff's application for leave to
appeal from the denial of that motion. The circuit court,
George V. Boucher, J., then issued an opinion and judgment
upholding the constitutionality of 1982 PA 325 and denying
plaintiff's request for declaratory relief. Plaintiff appeals. *Held:*

1. Implementation of the county jail overcrowding act results
in the early release of persons serving determinate sentences.
Therefore, this case is not controlled by Supreme Court prece-
dent concerning the Prison Overcrowding Emergency Powers
Act which only affects persons serving indeterminate sentences.

2. The county jail overcrowding act, 1982 PA 325, results in
the release of prisoners prior to the expiration of their validly
imposed determinate sentences, and thus intrudes upon the
commutation power granted exclusively to the Governor in
Const 1963, art 5, § 14.

3. The Court of Appeals did not accept the proposition
advanced by the intervening defendant that Const 1963, art 5,
§ 14 is not violated by 1982 PA 325 because the act provides for

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 21 Am Jur Criminal Law §§ 589, 590, 607.
[1] 59 Am Jur 2d, Pardon and Parole §§ 7, 16.
60 Am Jur 2d, Penal and Correctional Institutions § 44.5.

early release of prisoners across-the-board, rather than on an individual basis. The Court noted that the act does provide for significant consideration of individual prisoners and did not accept the proposition that the power of commutation applies only to the early release of specific individuals based on a review of their personal history and circumstances.

4. The Court of Appeals did not accept the intervening defendant's assertion that the Legislature has the common-law authority to reduce validly imposed determinate sentences.

Reversed.

1. Constitutional Law — County Jail Overcrowding Act — Governor — Power of Commutation — Determinate Sentences.

The county jail overcrowding act unconstitutionally usurps the Governor's exclusive power of commutation since implementation of the act would result in the release of jail prisoners prior to the expiration of their validly imposed determinate sentences (Const 1963, art 5, § 14; MCL 801.51 et seq.; MSA 28.1748[1] et seq.).

2. Criminal Law — Legislature — Sentences — Determinate Sentences.

The Legislature does not have the common-law authority to reduce validly imposed determinate sentences.

3. Criminal Law — Sentencing — County Jail — Determinate Sentences.

Sentences to be served in a county jail are determinate sentences.

*David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for plaintiff.

*Varnum, Riddering, Schmidt & Howlett* (by *Jon F. DeWitt* and *Jonathan W. Anderson),* for defendant.

*Patrick C. Bowler,* for intervening defendant.

Amicus Curiae:

*Alan L. Cropsey,* for 1983 House Committee on Corrections, 1982 House Committee on Correc-

tions, the Joint Conference Committee on HB 5328, and the Legislative Leadership.

*James W. Boyd,* for Michigan Prison Overcrowding Project.

Before: R. B. BURNS, P.J., and D. E. HOLBROOK, JR., and R. L. TAHVONEN,* JJ.

PER CURIAM. The issue in this appeal is whether 1982 PA 325, commonly known as the county jail overcrowding act, MCL 801.51 *et seq.;* MSA 28.1748(1) *et seq.,* unconstitutionally contravenes the Governor's exclusive commutation power under Const 1963, art 5, § 14. The circuit court found the act constitutional. We reverse.

## I

1982 PA 325 authorizes the county sheriff to declare a jail overcrowding state of emergency and sets forth a multi-step procedure for reducing the prisoner population of county jails in which a state of emergency has been declared.[1] On May 12, 1983,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Section 2 of the act provides that if the general prisoner population of a county jail exceeds 100% of the jail's rated design capacity for seven consecutive days, the sheriff must certify that fact to the chief circuit judge, chief district judge, and each municipal judge in the county, and to certain county officials.

Under § 3, if a majority of the judges and county officials notified pursuant to § 2, do not find within three business days that the sheriff acted in error, the sheriff shall declare a jail overcrowding state of emergency.

Section 4 requires that notice of the declaration be given to the judges and county officials listed in § 2, the county prosecutor and the chief law enforcement officials of state, county and municipal law enforcement agencies located in the county.

Section 5 provides that persons notified pursuant to § 4, as well as other judges in the county, may attempt to reduce the prisoner population through any available means already within the scope of their legal authority.

Section 6 states that if the actions taken pursuant to § 5 do not

the Kent County Sheriff declared an overcrowding state of emergency pursuant to 1982 PA 325. On May 16, 1983, plaintiff brought this action for declaratory relief seeking to have 1982 PA 325 declared unconstitutional and to enjoin the sheriff from releasing prisoners prior to the expiration of their original sentences. Plaintiff also sought a preliminary injunction to prevent prisoner releases under the act while the lawsuit was pending. The Kent County Office of the Defender was subsequently permitted to intervene as a defendant in the case. The circuit court denied plaintiff's motion for a preliminary injunction on May 27, 1983. Plaintiff's application for leave to appeal from the denial of his motion was denied by this Court on July 14, 1983. On July 19, 1983, the circuit court issued an opinion upholding the constitutionality of 1982 PA 325 and denying plaintiff's request for declaratory relief. Judgment was entered July 22, 1983.[2]

---

reduce the jail's population to 90% of rated design capacity within 14 days after the declaration of the state of emergency, the sheriff shall present to the chief circuit judge certain information concerning each prisoner residing in the county jail at that time. The chief circuit judge is then required to classify the prisoners into two groups: high-risk and non-high-risk individuals. The chief circuit judge must then determine a minimum and a maximum percentage by which the sentences can be reduced. The sheriff must then reduce the sentences of all non-high-risk prisoners by an equal percentage which is within the minimum and maximum percentages determined by the chief circuit judge.

Under § 7, if the actions taken pursuant to §§ 5 and 6 do not reduce the jail's population to 90% of rated design capacity within 28 days after the declaration of the state of emergency, the original sentences, not including good time, of all prisoners residing in the jail on that date shall be equally reduced by the sheriff by the least possible percentage reduction necessary, not to exceed 30%, to reduce the jail's population to 90% of the rated design capacity.

[2] Amicus curiae briefs have been filed by (1) the Michigan Prison Overcrowding Project, and (2) the 1983 House Committee on Corrections, the 1982 House Committee on Corrections, the Joint Conference Committee on HB 5328, and the Legislative Leadership.

## II

The jail overcrowding act is the counterpart to the Prison Overcrowding Emergency Powers Act, MCL 800.71 *et seq.;* MSA 28.1437(1) *et seq.,* which authorizes the reduction of minimum sentences of prisoners incarcerated in state prisons where a prison overcrowding state of emergency exists. In *Oakland County Prosecuting Attorney v Dep't of Corrections,* 411 Mich 183; 305 NW2d 515 (1981), the prison overcrowding act was challenged as violative of the Governor's exclusive power to grant reprieves, commutations, and pardons under Const 1963, art 5, § 14. That provision states:

"The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor."

In *Oakland County* the Court stated that it remained steadfast in its support of the Governor's exclusive power of commutation. However, the Court held that the prison overcrowding act does not intrude upon the Governor's prerogative under art 5, § 14 because the statute derives from the Legislature's power to "provide for indeterminate sentences" and to provide for the "release of persons imprisoned or detained under [indeterminate] sentences" as granted by Const 1963, art 4, § 45. Since the challenged statute involved the exercise of the specific power granted to the Legislature by art 4, § 45, the Court found no infringement upon the Governor's exclusive power of commutation.

While the prison overcrowding act affects only persons serving indeterminate sentences, imple-

mentation of 1982 PA 325 results in the early release of persons serving determinate sentences.[3] Inasmuch as the constitutional grant of power under art 4, § 45 extends only to indeterminate sentences, it is apparent that the decision in *Oakland County* does not control the instant case.

## III

Intervening defendant and amicus curiae assert that there can be no infringement upon the Governor's power of commutation unless it is found that the Legislature intended to exercise such power. They argue that 1982 PA 325 is constitutional because the act was designed to remedy the state-wide problem of overcrowded jails and was not intended to usurp the Governor's commutation prerogative. This position is somewhat supported by dicta in *Oakland County, supra,* pp 196-197. However, we believe the argument is irrelevant. The question is not whether the Legislature intended to unconstitutionally usurp the Governor's exclusive power of commutation, but whether it has in fact done so. Although the act has the laudable purpose of providing a remedy for county jail overcrowding, it results in the release of prisoners prior to the expiration of their validly imposed determinate sentences, and thus intrudes upon the power granted exclusively to the Governor.

Intervening defendant also urges that art 5, § 14 is not violated because the statute provides for early release of prisoners across-the-board, rather than on an individualized basis. We note, however, that 1982 PA 325 does provide for significant

[3] County jail sentences are determinate. *People v Lyles,* 76 Mich App 688; 257 NW2d 220 (1977); *People v Leonard,* 51 Mich App 368; 214 NW2d 888 (1974), *lv den* 391 Mich 827 (1974).

consideration of individual prisoners.[4] More important, we do not accept the proposition that the power of commutation applies only to the early release of specific individuals based on a review of their personal history and circumstances. We agree with the following statement of the California Court of Appeals, Third District, in *Way v Superior Court of San Diego County,* 74 Cal App 3d 165, 177; 141 Cal Rptr 383, 391 (1977):

"Amicus curiae suggests that commutation and pardon are not the equivalent of *amnesty* and that accordingly even if the Legislature does not have the power to grant individual commutations, the legislation must be upheld as an amnesty or general pardon of current [indeterminate sentencing law] prisoners. Such a distinction has deep historical roots. However, it has been firmly rejected by the federal courts (see *Brown v Walker,* 161 US 591, 601; 16 S Ct 644, 648; 40 L Ed 819, 822 [1896]), and we are unaware of any state court decision adopting it. Amnesty is nothing more than collective pardon, and the distinction between the two is without legal significance; only the Governor can grant general amnesty, as only he can pardon or commute." (Emphasis in original; citations omitted.)

Intervening defendant next argues that the common law provides the same power to the Legislature to establish conditions of release with regard to determinate sentences as art 4, § 45 provides with regard to indeterminate sentences. While the Legislature does clearly have a role in establishing the length of sentence, we cannot accept intervening defendant's assertion that the Legislature has the common-law authority to reduce validly imposed sentences. The decisions cited by intervening defendant deal only with the Legislature's power

[4] See MCL 801.56, 801.57; MSA 28.1748(6), 28.1748(7).

to fix sentence parameters and not with the power to reduce previously imposed sentences.

The courts of this state have "jealously guarded" the Governor's prerogative under art 5, § 14. *Oakland County, supra,* p 191, citing *People v Freleigh,* 334 Mich 306; 54 NW2d 599 (1952), and *People v Fox,* 312 Mich 577; 20 NW2d 732 (1945). It is clear that implementation of 1982 PA 325 will result in the release of jail prisoners prior to the expiration of their validly imposed determinate sentences. In our opinion, the act unconstitutionally usurps the Governor's exclusive power under art 5, § 14. The decision of the trial court is reversed.

Reversed.